**ORIGINAL**

# In the United States Court of Federal Claims

No. 12-859 C

(Filed August 1, 2013)

**FILED**

AUG − 1 2013

U.S. COURT OF
FEDERAL CLAIMS

\* \* \* \* \* \* \* \* \* \* \* \* \*
JULIO A. RAMOS,            \*
                           \*   Takings; 28 U.S.C. § 2501
        *Pro Se Plaintiff*, \*   (2006); RCFC 12(b)(1); RCFC
                           \*   12(b)(6); Untimely Claim;
    v.                     \*   Confiscation of Property at Time
                           \*   of Criminal Arrest Not a Taking
THE UNITED STATES,         \*   for Public Use; *Res Judicata*;
                           \*   *Pro Se*.
        Defendant.         \*
\* \* \* \* \* \* \* \* \* \* \* \* \*

*Julio A. Ramos, pro se* plaintiff.

*Ryan M. Majerus*, United States Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, Washington, DC, for defendant. *Letitia B. Pinkney*, Office of Chief Counsel, Drug Enforcement Administration, of counsel.

## OPINION

**Bush**, *Judge*.

The court has before it defendant's motion to dismiss this suit for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

Defendant's motion has been fully briefed.[1] For the reasons stated below, defendant's motion, filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), is granted.

## BACKGROUND[2]

Mr. Ramos was indicted for drug trafficking in 1999 in Texas but was then living in the Dominican Republic. Compl. ¶¶ 7-8. The United States and the Dominican Republic cooperated in arresting Mr. Ramos and seizing his assets. *Id.* ¶¶ 9-13. His assets included vehicles, jewelry, electronics, and real property which remained in the custody of the Dominican authorities. *Id.* ¶¶ 13-14. Mr. Ramos was extradited to the United States, stood trial, was convicted and is currently serving a 405-month sentence of imprisonment. *Id.* ¶¶ 15-16. The United States did not pursue forfeiture of Mr. Ramos's seized assets. *Id.* ¶ 17.

In 2002, Mr. Ramos "began litigating" the return of his seized assets in a federal district court in Texas. Compl. ¶ 18; *see also* Def.'s Mot. App. at A001-A008. The motion for return of seized property was filed on August 26, 2002 under Federal Rule of Criminal Procedure 41(e), now codified at Fed. R. Crim. P. 41(g). Def.'s Mot. App. at A001. The motion was denied on September 13, 2002, as was Mr. Ramos's related motion for relief from judgment, on July 13, 2005. *Id.* at A014, A019-A022. A second motion for relief from judgment, filed December 19, 2005, was denied on January 3, 2006. *Id.* at A023-A032. The trial court's denial of Mr. Ramos's request for the return of his seized property was affirmed

---

[1]/ The parties' briefs include Defendant's Motion to Dismiss (Def.'s Mot.), Plaintiff's Response to Defendant's Motion to Dismiss (Pl.'s Resp.), Defendant's Reply (Def.'s Reply), and Plaintiff's Notice of Filing of Supplemental Documents (Pl.'s Resp. Supp.).

[2]/ The facts recited here are taken from the complaint and are uncontested for the purposes of deciding defendant's motion. *See* Def.'s Mot. at 2 ("For the purposes of this motion, we assume, as we must, that all allegations in the complaint are true."). Additional facts are provided by court records relied upon by the parties. In a challenge to a complaint for failure to state a claim, court documents are public records which, if undisputed, may be considered without converting a motion to dismiss under RCFC 12(b)(6) into a motion for summary judgment. *See, e.g., Wagstaff v. United States*, 105 Fed. Cl. 99, 103 n.1 (2012) (citing *Biomedical Patent Mgmt. Corp. v. Cal. Dep't of Health Servs.*, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); *Boye v. United States*, 90 Fed. Cl. 392, 416 (2009) (citations omitted), *aff'd*, 413 F. App'x 239 (Fed. Cir. 2011).

by the United States Court of Appeals for the Fifth Circuit. *Id.* at A033-A036; *see Ramos v. United States*, 212 F. App'x 348 (5th Cir. 2007) (*Ramos I*).

Next, on July 27, 2010, Mr. Ramos filed a civil suit in the same Texas district court for the return of his seized property, again citing Federal Rule of Criminal Procedure 41(e). Def.'s Mot. App. A037-A044. In this suit, Mr. Ramos added a claim seeking damages for the "Deprivation of Ramos' property," citing the Fifth Amendment of the United States Constitution. *Id.* at A038. According to this suit, the actual value of the seized property in the Dominican Republic was $51,546,000. *Id.* at A039.

Mr. Ramos's civil suit was dismissed, on *res judicata* grounds, on December 19, 2010. Def.'s Mot. App. at A050-A052. Mr. Ramos again filed a motion for relief from judgment, which was denied on April 5, 2011. *Id.* at A053-A057. The dismissal of the civil suit was upheld by the Fifth Circuit on December 21, 2011. *Id.* at A058-A064; *see Ramos v. United States*, 455 F. App'x 424 (5th Cir. 2011) (*Ramos II*).

Aside from the criminal and civil proceedings in district court and appeals to the Fifth Circuit, Mr. Ramos has pursued other avenues of recourse in his quest to retrieve the property seized in the Dominican Republic or to obtain compensation for his confiscated property. By letter dated May 14, 2007, the United States Embassy, acting in response to a court order apparently obtained by Mr. Ramos, informed the Dominican authorities that the United States had no interest in the seized property and presented a request that the property be returned to Mr. Ramos, if appropriate. Compl. ¶ 21, Ex. B. Mr. Ramos, on March 20, 2012, sent a document titled "Demand for Compensation for Property Seized/Converted" to the Attorney General of the United States, the Dominican Republic Embassy, and the Drug Enforcement Administration. Compl. ¶ 23, Ex. A (Federal Tort Claim Pages 1-3). The amount claimed in the "Demand" is the same amount claimed in Mr. Ramos's civil suit in the district court – $51,546,000. Compl. ¶ 23, Ex. A (Federal Tort Claim Page 1). Finally, in documents dated July 25, 2005, October 17, 2007, January 8, 2008, July 22, 2008, and May 8, 2013, plaintiff appears to have made efforts to obtain relief from Dominican authorities. *See generally* Pl.'s Resp. Supp.

Mr. Ramos asserts he has been notified by the Dominican authorities that

his seized property is no longer "traceable." Compl. ¶ 22. Plaintiff also states that he has had no response from the United States as to his demand for compensation for the value of the seized property. *Id.* ¶ 24. On December 10, 2012, plaintiff filed a three-count complaint in this court, asserting negligent "directed" seizure of his property by the United States; conversion of his property by the United States; and a taking of his property by the United States.[3] *Id.* at 8-9. Defendant raises several challenges to the claims in the complaint which will be discussed in the analysis section of this opinion.

## DISCUSSION

### I. Standards of Review

#### A. *Pro Se* Litigants

The court acknowledges that Mr. Ramos is proceeding *pro se*, and is "not expected to frame issues with the precision of a common law pleading." *Roche v. United States Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint and briefs thoroughly and has attempted to discern all of plaintiff's legal arguments.

#### B. RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v.*

---

[3]/ Plaintiff's request for a jury trial must necessarily be rejected because there is no right to a jury trial in this court and this court does not conduct trials by jury. *E.g.*, *Webster v. United States*, 74 Fed. Cl. 439, 444 (2006) (citing *United States v. Sherwood*, 312 U.S. 584, 587 (1941)).

*United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

The court may inquire into evidence outside the pleadings to establish jurisdictional facts. *Reynolds*, 846 F.2d at 747; *Rogers v. United States*, 95 Fed. Cl. 513, 514-15 (2010) (citations omitted). "Indeed, the court may, and often must, find facts on its own." *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002). When the government has asserted that a claim is barred by a jurisdictional statute of limitations, the plaintiff bears the burden of proving the timeliness of his suit. *See, e.g., Alder Terrace*, 161 F.3d at 1377 ("As the plaintiff in the underlying suit, the burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by the [plaintiff]." (citing *McNutt*, 298 U.S. at 189)).

### C.   RCFC 12(b)(6)

When considering a motion to dismiss under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236. The court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (citations omitted). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

## II.   Tucker Act Jurisdiction

This court's jurisdiction, based on the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), is a grant of

> jurisdiction to render judgment upon any claim against
> the United States founded either upon the Constitution,
> or any Act of Congress or any regulation of an executive
> department, or upon any express or implied contract with
> the United States, or for liquidated or unliquidated
> damages in cases not sounding in tort.

The Tucker Act, however, "does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted). A plaintiff coming before the United States Court of Federal Claims, therefore, must also identify a separate provision of law conferring a substantive right for money damages against the United States. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (citing *Testan*, 424 U.S. at 398).

## III.  Analysis

### A.  This Court Has No Jurisdiction over Tort Claims

The first two counts of the complaint, which allege negligent "directed" seizure and conversion of property by the United States, Compl. at 8, sound in tort. *E.g., Johnson v. United States*, 105 Fed. Cl. 85, 93 (2012) ("Plaintiff's allegation of negligence is an archetypal tort claim.") (citation omitted); *Republic of New Morocco v. United States*, 98 Fed. Cl. 463, 468 (2011) ("Claims alleging conversion or destruction of property . . . sound in tort.") (citation omitted). These two tort claims are not within this court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1) (stating that the court's jurisdiction is limited to cases "not sounding in tort"); *Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) (noting that "tort cases are outside the jurisdiction of the Court of Federal Claims"); *Brown v. United States*, 105 F.3d 621, 623-24 (Fed. Cir. 1997) (noting that this court "lacks jurisdiction over tort actions against the United States"). Because counts one and two of the complaint sound in tort, these claims must be dismissed for lack of subject matter jurisdiction.

### B.  Plaintiff's Takings Claim is Time-Barred

There is no dispute that this court possesses subject matter jurisdiction over takings claims against the United States. *E.g., Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005). Defendant asserts, however, that Mr. Ramos's takings claim, presented in count three of the complaint, is barred by the court's six-year statute of limitations, 28 U.S.C. § 2501 (2006), thus defeating this court's jurisdiction over the sole remaining claim in this suit.[4] Def.'s Mot. at 8. If Mr. Ramos's takings claim accrued before December 10, 2006, his suit, filed on December 10, 2012, is barred by § 2501.

The parties disagree as to when Mr. Ramos's takings claim accrued. Defendant argues that the date of the property seizure in the Dominican Republic, August 13, 1999, marks the accrual of plaintiff's takings claim. Def.'s Mot. at 8. Plaintiff first argues that his takings claim accrued no earlier than March 19, 2007, the date of the district court order and the date on which, in plaintiff's view, the United States "relinquished an interest in the [seized] property." Pl.'s Resp. at 2-3. Although it is not clear from plaintiff's response brief, plaintiff might also contend that the letter from the American Embassy, dated May 17, 2007, marks the accrual date of his claim, because this letter "finally" relinquished any rights the United States could assert in the seized property. *Id.*

The court finds that Mr. Ramos's takings claim accrued no later than August 26, 2002, when he filed a motion for the return of his seized property in the federal district court.[5] It is clear from the face of his motion that in August of 2002 Mr. Ramos knew all of the facts of the 1999 seizure that would be needed to support his claim for a taking. *See* Def.'s Mot. App. at A001-A008. Because plaintiff knew, on August 26, 2002, all of the necessary facts regarding the government action he challenges in this suit, his takings claim accrued no later than August 26, 2002. *See, e.g., Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) ("[A] cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability

---

[4] Defendant does not accept that the complaint presents a proper takings claim, even if the jurisdictional bar of § 2501 could be overcome. *See infra.*

[5] The Fifth Circuit recognized in *Ramos II* that Mr. Ramos, as of August 26, 2002, could have asserted a claim for compensation for his seized property. 455 F. App'x at 427 ("When Ramos initially sought the return of his property, he could have also brought a claim for damages related to the seizure.").


have occurred *and* the plaintiff was or should have been aware of their existence." (citing *Kinsey v. United States*, 852 F.2d 556, 557 n.* (Fed. Cir. 1988))).

Because plaintiff's takings claim was filed more than ten years after it accrued, it is time-barred by § 2501. This court's six-year limitations period is jurisdictional and may not be equitably tolled. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008). For this reason, count three of the complaint must also be dismissed pursuant to RCFC 12(b)(1).

### C.  In the Alternative, Count Three of the Complaint Also Fails to State a Claim

Defendant, pursuant to RCFC 12(b)(6), challenges the sufficiency of the complaint regarding plaintiff's takings claim on several grounds. Should the court have erred in its analysis of the accrual date of plaintiff's takings claim, the court also addresses two of defendant's arguments here for the sake of judicial economy. First, defendant contends that seizure of property in furtherance of a criminal prosecution cannot be a taking. Def.'s Mot. at 12-14. Second, defendant argues that plaintiff's taking claim is barred by the doctrine of *res judicata*. *Id.* at 14-15. The court agrees with both of these arguments, as discussed below.[6]

#### 1.  Seizures in Criminal Investigations Do Not Give Rise to Takings Claims

This court is bound by the precedential decisions of the United States Court of Appeals for the Federal Circuit. One such decision is *Acadia Technology, Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006). In *Acadia*, the Federal Circuit held that:

> When property has been seized pursuant to the criminal laws or subjected to *in rem* forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation. The same rule applies even if the property is seized as evidence in a criminal

---

[6] The court does not reach and expresses no opinion as to the merits of defendant's other RCFC 12(b)(6) arguments.

> investigation or as the suspected instrumentality of a
> crime . . . .

458 F.3d at 1331 (citations omitted). The principle that police power seizures are not takings is well-established in precedent binding on this court. *See Kam-Almaz v. United States*, 682 F.3d 1364, 1371 (Fed. Cir. 2012) ("'Property seized and retained pursuant to the police power is not taken for a "public use" in the context of the Takings Clause.'" (quoting *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) and citing *Acadia*, 458 F.3d at 1331-32)).

This court has applied the principle set forth in *Kam-Almaz*, *AmeriSource* and *Acadia* in a number of cases. *See, e.g., Steward v. United States*, 80 Fed. Cl. 540, 543 (2008) (stating that "the loss, depreciation or damage of items confiscated in the context of a criminal investigation cannot be the basis of a takings claim in this court") (citations omitted); *Alde, S.A. v. United States*, 28 Fed. Cl. 26, 34 (1993) (noting that when this court or its predecessors have considered claims "based on the seizure of property by the Government, assertions that a taking occurred have been uniformly rejected"). In *Acadia*, the Federal Circuit approved of a decision of this court which reasoned that:

> The government's seizure, retention, and damaging of [confiscated] property did not give rise to an actionable claim for a taking, . . . because "items properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment."

458 F.3d at 1332 (quoting *Seay v. United States*, 61 Fed. Cl. 32, 35 (2004)). Because the property confiscated from Mr. Ramos was seized pursuant to lawful criminal proceedings and thus was not taken for public use, its loss, under the precedent of this circuit, cannot give rise to a takings claim. *See id.*

The facts alleged in Mr. Ramos's takings claim do not entitle him to a legal remedy. For this reason, his takings claim, if it were not time-barred, would necessarily be dismissed for failure to state a claim. *Lindsay*, 295 F.3d at 1257. Thus, count three of the complaint would be dismissed under RCFC 12(b)(6) if it were within this court's jurisdiction.

### 2. Plaintiff's Takings Claim Is Barred by *Res Judicata*

Defendant also contends that Mr. Ramos's takings claim is barred by the doctrine of *res judicata*. The Supreme Court has explained that under the doctrine of *res judicata*, also known as claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). In order for *res judicata* to apply here, the government must demonstrate that: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citations omitted). This court reviews motions to dismiss based on *res judicata* under the standards of RCFC 12(b)(6). *Chisolm v. United States*, 82 Fed. Cl. 185, 193, *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008).

There is no question that the parties are identical in this suit and the civil suit filed by Mr. Ramos in the district court seeking the return of his seized property. *Compare* Compl. at 1, *with* Def.'s Mot. App. at A037. There is also no dispute that the civil suit proceeded to a final judgment on the merits. Def.'s Mot. App. at A050-A052 (dismissing the lawsuit on *res judicata* grounds); *see* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4435 (2d ed. 2002) ("[D]ismissal of a second action on the ground that it is precluded by a prior action is itself effective as res judicata, and a judgment on the merits that forecloses further litigation of the preclusion question in a third action."); *see also, e.g., Sommer v. Unum Life Ins. Co. of Am.*, 35 F. App'x 489, 490-91 (9th Cir. 2002) (affirming the *res judicata* dismissal of the third suit filed by the appellant which followed the *res judicata* dismissal of his second suit); *Fenelon v. United States Postal Serv.*, 43 F.3d 669, 1994 WL 724994, at *2 (5th Cir. Dec. 14, 1994) (table) ("[A] dismissal on the basis of res judicata is also a final decision on the merits which has res judicata effect.") (citation omitted). Here, therefore, the first two criteria for the application of the doctrine of *res judicata* have been met.

Furthermore, plaintiff's takings claim is based on the same transactional facts as the damages claim in Mr. Ramos's civil suit in the district court. The takings claim before this court requests compensation in the amount of $51,546,000, the same amount alleged in Mr. Ramos's civil suit before the district
10

court to be the actual value of the seized property. *Compare* Compl. at 9, *with* Def.'s Mot. App. at A039. Mr. Ramos's takings claim also challenges the same government action – the seizure of plaintiff's property in the Dominican Republic. Thus, the claims in the two suits are based on identical transactional facts. For these reasons, with all three criteria for claim preclusion having been met, Mr. Ramos's takings claim, if it were not time-barred, would necessarily be dismissed for failure to state a claim because it is also barred by the doctrine of *res judicata*.

### D.  All of Mr. Ramos's Claims Must Be Dismissed Not Transferred

The parties dispute whether transfer of plaintiff's claims, rather than dismissal, is appropriate. Transfer of cases from this court to a district court is governed by 28 U.S.C. § 1631 (2006), which states in relevant part that:

> Whenever a civil action is filed in [this] court . . . and [this] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

As this court has stated, "[t]ransfer is appropriate when three elements are met: (1) The transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice." *Brown v. United States*, 74 Fed. Cl. 546, 550 (2006) (citing 28 U.S.C. § 1631).

The parties have only addressed the question of whether Mr. Ramos's tort claims should be transferred to a district court. The court will nonetheless begin its analysis of the transfer dispute with a determination of whether plaintiff's takings claim should be transferred to a district court. *See Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1375 (Fed. Cir. 2005) (noting that § 1631

11

provides a "statutory requirement that transfer be considered to cure jurisdictional defects"). The court will then turn to the question of whether § 1631 indicates that plaintiff's tort claims should be transferred to a district court.

### 1. No Jurisdiction in a District Court for a Takings Claim Exceeding $10,000

Mr. Ramos seeks $51,546,000 for his takings claim based on the seizure of his property in the Dominican Republic. Compl. at 9. As the Federal Circuit has noted, "the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000." *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004) (citing *Palm Beach Isles Assocs. v. United States*, 208 F.3d 1374, 1383 n.10 (Fed. Cir. 2000)). Because Mr. Ramos's takings claim could not "have been brought" in a district court, transfer of his takings claim is not permitted by 28 U.S.C. § 1631.

### 2. Transfer of Plaintiff's Tort Claims Is Not in the Interest of Justice

Plaintiff requests, as an alternative to dismissal, that his tort claims for negligence and conversion be transferred to a federal district court. Pl.'s Resp. at 2. The court does not agree, for at least three reasons. First, the Supreme Court has recognized that tort claims cognizable under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-2680 (2006), do not include claims for injuries which have occurred outside the United States. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004). *Sosa* is controlling precedent and would bar relief for plaintiff on his tort claims in a district court in Texas, where he resides, or in the United States District Court for the District of Columbia, the court to which he has requested transfer of his tort claims. *See, e.g., Al Janko v. Gates*, 831 F. Supp. 2d 272, 284 n.23 (D.D.C. 2011) (citing *Sosa*, 542 U.S. at 711-12); *Hernandez v. United States*, 802 F. Supp. 2d 834, 844 (W.D. Tex. 2011) (citing *Sosa*, 542 U.S. at 712). Because the FTCA would not support relief for Mr. Ramos's tort claims in a district court, it is not in the interest of justice to transfer his tort claims.

Second, as noted by the Fifth Circuit in *Ramos II*, any additional claims arising from the operative facts of the seizure of plaintiff's property are now barred by the doctrine of *res judicata*. 455 F. App'x at 427 ("When Ramos

initially sought the return of his property, he could have also brought a claim for damages related to the seizure. As a consequence, Ramos's added claim for damages does not prevent *res judicata* from barring his claims."). Third, in the court's view, plaintiff's tort claims would not be timely under the two-year statute of limitations of the FTCA because they were submitted to the United States almost ten years after August 26, 2002, when, at the latest, such claims accrued. *See* 28 U.S.C. § 2401(b) (2006). Because plaintiff's tort claims are untimely and fail to state a claim upon which a district court may grant relief, transfer of these claims, pursuant to § 1631, is not appropriate.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed March 4, 2013, is **GRANTED**;

(2) The Clerk's office is directed to **ENTER** final judgment **DISMISSING** all counts of plaintiff's complaint, filed December 10, 2012, without prejudice for lack of subject matter jurisdiction; and,

(3) No costs.

Lynn J. Bush
Judge